PAUL MARSA, PLAINTIFF, v. DONALD J. WERNIK, IN-
DIVIDUALLY AND AS THE MAYOR OF THE BOROUGH
OF METUCHEN, DONALD J. BARNICKEL, JOHN W.
BERTRAND, PATRICIA LAGAY, DENNIS O'LEARY,
THOMAS E. SHARP AND JOHN WILEY, JR., INDIVID-
UALLY AND AS MEMBER OF THE COUNCIL OF THE
BOROUGH OF METUCHEN, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided November 6, 1978.

Mr. *Robert A. Vort* for plaintiff.

Mr. *Martin A. Spritzer* for defendants.

Mr. *Thomas W. Sharlow* for intervener Knights of Columbus, St. Francis Council 3272.

FURMAN, J. S. C. Plaintiff challenges the constitutionality of the practice of a nondenominational invocation or, alternatively, a silent meditation of about a minute at the start of regular meetings of the Metuchen Borough Council, immediately following the announcement of compliance with the Open Public Meetings Act (*N. J. S. A.* 10:4–6 *et seq.*) and the roll call. His challenge is brought solely under the establishment of religion clause of the First Amendment to the United States Constitution, which is applicable to the States under the Fourteenth Amendment. The Knights of Columbus have intervened.

On motion and cross-motion for summary judgment the facts are undisputed. The council practice, which is not formalized in any ordinance, resolution or rule of procedure, is as follows. The mayor asks those who wish on the council and in the audience to rise for an invocation or silent meditation. The individual council members, on a rotating basis, give a short invocation or ask for a brief silent meditation. The salute to the flag follows. Plaintiff is an atheist who has objected to the practice and remained seated during the invocation or silent·meditation and the salute to the flag.

Three recent invocations by as many council members are before the court. Two are addressed to "Heavenly Father." Another is a prayer for protection and nourishment without addressing by name God or divine providence. A fourth council member asked for silent meditation: "Let us take the next few moments of silence to each seek in our own way whatever sources of inspiration will help us make those decisions which will be in the best interests of all the citizens of the Borough of Metuchen."

Nothing in the record suggests that, except as a prelude to silent meditation, any council members have offered a nonreligious call to conscience or other moral declaration, rather than an invocation to divinity.

*Lincoln v. Page,* 109 *N. H.* 30, 241 *A.* 2d 799 (Sup. Ct. 1968), upheld the constitutionality of a practice of opening town meetings with a prayer by a local clergyman. The practice was viewed as not an establishment of religion proscribed by the establishment clause of the First Amendment in "any pragmatic, meaningful and realistic sense."

No other direct authority is cited. In United States and New Jersey Supreme Court opinions invalidating prayers in public schools (*Abington School District v. Schempp,* 374 *U. S.* 203, 83 *S. Ct.* 1560, 10 *L. Ed.* 2d 844 (1963); *Engel v. Vitale,* 370 *U. S.* 421, 82 *S. Ct.* 1261, 8 *L. Ed.* 2d 601 (1962); *State Bd. of Ed. v. Netcong Bd. of Ed.,* 108 *N. J. Super.* 564 (Ch. Div. 1970), aff'd 57 *N. J.* 172 (1970), cert. den. 401 *U. S.* 1013, 91 *S. Ct.* 1253, 28 *L. Ed.* 2d 550 (1971)) the impressionability of children and their compulsory school attendance are factors considered. *Abington* is also distinguishable because the laws struck down required the reading of verses from the Bible.

Justice Brennan, concurring in *Abington,* drew a distinction between school prayers and prayers before legislative bodies, as follows:

The saying of invocational prayers in legislative chambers, state or federal, and the appointment of legislative chaplains, might well

represent no involvements of the kind prohibited by the Establishment Clause. Legislators, federal and state, are mature adults who may presumably absent themselves from such public and ceremonial exercises without incurring any penalty, direct or indirect. [374 U. S. at 299, 300, 83 S. Ct. at 1612]

In *Zorach v. Clausen*, 343 U. S. 306, 72 S. Ct. 679, 96 L. Ed. 954 (1951), which ruled constitutional a program of released time on a voluntary basis for religion education classes during school hours outside school, Justice Douglas commented broadly in dictum:

There cannot be the slightest doubt that the First Amendment reflects the philosophy that Church and State should be separated. And so far as interference with the "free exercise" of religion and an "establishment" of religion are concerned, the separation must be complete and unequivocal. The First Amendment within the scope of its coverage permits no exception; the prohibition is absolute. The First Amendment, however, does not say that in every and all respects there shall be a separation of Church and State. Rather, it studiously defines the manner, the specific ways, in which there shall be no concert or union or dependency one on the other. That is the common sense of the matter. Otherwise, the state and religion would be aliens to each other — hostile, suspicious, and even unfriendly. Churches could not be required to pay even property taxes. Municipalities would not be permitted to render police or fire protection to religious groups. Policemen who helped parishioners into their places of worship would violate the Constitution. Prayers in our legislative halls; the appeals to the Almighty in the messages of the Chief Executive; the proclamations making Thanksgiving Day a holiday; "so help me God" in our courtroom oaths — these and all other references to the Almighty that run through our laws, our public rituals, our ceremonies would be flouting the First Amendment. A fastidious atheist or agnostic could even object to the supplication with which the Court opens each session: "God save the United States and this Honorable Court." [343 U. S. at 312, 313, 72 S. Ct. at 683]

In New Jersey the rules of procedure of both the Senate and General Assembly provide for a prayer as the first order of business after the presiding officer has taken the chair.

 In constitutional challenges under the establishment of religion clause the United States Supreme Court has

evolved a three-pronged test. *Meek v. Pittenger,* 421 *U. S.* 349, 95 *S. Ct.* 1753, 44 *L. Ed.* 2d 217 (1975), rch. den. 422 *U. S.* 1049, 95 *S. Ct.* 2668, 45 *L. Ed.* 2d 702 (1975); *Committee for Public Education v. Nyquist,* 413 *U. S.* 756, 93 *S. Ct.* 2955, 37 *L. Ed.* 2d 948 (1973); *Lemon v. Kurtzman,* 403 *U. S.* 602, 91 *S. Ct.* 2105, 29 *L. Ed.* 2d 745 (1971), rch. den. 404 *U. S.* 876, 92 *S. Ct.* 24, 30 *L. Ed.* 2d 123 (1971); *Walz v. Tax Comm'n,* 397 *U. S.* 664, 90 *S. Ct.* 1409, 25 *L. Ed.* 2d 697 (1970); *Resnick v. E. Brunswick Tp. Bd. of Ed.,* 77 *N. J.* 88 (1978). Legislation violates this clause if it is without a secular purpose, if it is without a primary effect that neither advances nor inhibits religion or if it fosters excessive governmental entanglement with religion. Unless meeting all three of the foregoing tests legislation or governmental action of a legislative nature is constitutionally invalid.

Assuming that a practice of a municipal governing body is legislative action which may be proscribed under the establishment of religion clause (*Lincoln v. Page, supra*), the practice of the Metuchen Borough Council must be measured under the three-pronged test.

The practice under challenge does sanction a religious exercise at a governmental meeting, an invocation as a prayer for divine blessing and guidance. But the religious exercise is nondenominational and may or may not be called for at the option of the council member whose turn it is to give an invocation or to ask for silent meditation. There is no compulsion on any council member or member of the audience to participate or to stand during the invocation or silent meditation.

A secular purpose and a secular primary effect are evident, that is, to call on the consciences and moral resolves of those in attendance at the council meeting and to inspire their wisest and fairest participation through a few opening moments of prayer or reflection. That one alternative is a religious invocation is a recognition that a majority of Ameri-

cans are affiliated with some organized religion and may gain moral encouragement through prayer.

It is significant that prayer at legislative as well as other public meetings is so interwoven into the fabric of American life. Unlike the school prayer cases, the Metuchen Borough Council practice does not advance religion with impressionable youth. There is no evidence in the record of any political reprisal against a council member who elected silent meditation rather than an invocation or of any denial of an opportunity to prevent his views because plaintiff or any other member of the public present chose to sit during an invocation.

Plaintiff's challenge rests solely on the sanction of prayer at a governmental meeting, in some sense a governmental recognition and fostering of religion and, through tax moneys which finance the meeting, a governmental contribution to religion.

A rationale striking down the practice under challenge as an excessive governmental entanglement with religion would extend to interdict prayers before federal and state legislative bodies.[1]

In the absence of higher judicial authority this court concludes that any Metuchen Borough Council entanglement with religion is minimal, not excessive. The practice under challenge is sustained because of its secular purpose and primary effect and because it does not foster excessive governmental entanglement with religion.

Judgment is rendered for defendants.

---

[1]Except that rules of procedure of an independent branch of government may be held nonreviewable judicially. See *Abington, supra,* concurring opinion by Justice Brennan, 374 *U. S.* at 300, 83 *S. Ct.* 1560. But see *Gewertz v. Joint Legislative Committee,* 132 *N. J. Super.* 435, 436 (App. Div. 1975), certif. den. 68 *N. J.* 156 (1975).